**23-11210-B**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

Tesfalem Issac,

*Plaintiff-Appellant,*

v.

Lockheed Martin,

*Defendant-Appellee*

Appeal from the United States District Court
For the Northern District of Georgia

1:22-cv-00893-MHC

---

## APPELLANT'S OPENING BRIEF

---

Matthew W. Carlton
Carlton Law, LLC
125 Clairemont Ave., Suite 470
Decatur, Georgia 30030
404-458-4084
mcarlton@carlton-law.com

*Attorney for Appellant*
*Tesfalem Issac*

**23-11210-B**
**Tesfalem Issac v. Lockheed Martin**

**Certificate of Interested Persons and Corporate Disclosure Statement**

1. Tesfalem Issac

2. Lockheed Martin

## Statement Regarding Oral Argument

Petitioner is not seeking oral argument in this case.

# Table of Contents

**Page**

Certificate of Interested Persons and Corporate Disclosure Statement………C-1

Statement Regarding Oral Argument……………………………..…………… i

Table of Contents……………………………………………...…………ii

Table of Citations………………………………………………….……iii

Jurisdictional Statement…………………………………………………v

Statement of Issues………………………………………………………1

Statement of Case……………………………………………………2

Summary of Argument…………………………………………………...6

Argument………………………………………………………………7

Conclusion………………………………………………………..14

Certificate of Compliance…………………………………………15

Certificate of Service………………………………………………15

## Table of Citations

**Cases**                                                    **Pages**

*Higdon v. Jackson,*

393 F.3d 1211, (11th Cir. 2004) …………………………………….6, 11, 12

*Melvin v. Federal Express Corp.,*

814 Fed App'x 506, (11th Cir. 2020)…………………………………12

*McGinley v. Houston,*

361 F.3d 1328, (11th Cir. 2004)……………………………………….9

*Sanchez v. Lympatx, Inc.,*

596 F.3d 1300 (11th Cir. 2010)……………………………………...10

*Simon ex rel. Fla. Rehab. Assocs., PLLC v. Healthsouth of Sarasota Ltd. P'Ship,*

No. 21-11618, 2022 WL 3910607, at * 5 (11th Cir. August 31, 2022)…10

*Thator v. Palm Beach County Sheriff's Office,*

449 F.3d 1342 (11th Cir. 2006)……………………………………….. ft. note 3, 9

*Whatley v. CNA Ins. Co.,*

189 F. 3d 1310 (11th Cir. 1999)……………………………………….5

**Statutes**                                                    **Pages**

28 U.S.C. §1291……………………………………………….iv

28 U.S.C. § 1331 ……………………………………………iv

29 U.S.C. §623 ……………………………………………12

31 U.S.C. § 3729…………………………………………...iv, 2 8

31 U.S.C. § 3730……………………………………iv, 1, 2, 4,8, 9, 10

**Rules**

FRCP 8(a)…………………………………………………13

FRCP 12(b)(6)……………………………………………5

## Jurisdictional Statement

The District Court for the Northern District of Georgia had Federal Question Jurisdiction, 28 U.S.C. § 1331, specifically, 31 U.S.C. § 3729(a)(1)(A); 31 U.S.C. § 3729(a)(1)(B); and 31 U.S.C. § 3730(h).

The Eleventh Circuit Court of Appeals has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291.

The Order that Appellant is appealing was issued on March 23, 2023. The Notice of Appeal was filed on April 12, 2023. This appeal is timely.

This appeal is from a final order and judgment that disposed of all the parties' claims.

## Statement of the Issue

Whether the district court committed reversable error when it dismissed Appellant's claim for retaliation pursuant to 31 U.S.C. § 3730(h).

## Statement of Case

### I.

This case was originally brought in the United States District Court for the Northern District of Oklahoma in March, 2018. (Order on Motion to Dismiss, p. 8). On March 2, 2022 Lockheed Martin's ("Lockheed") unopposed motion to transfer venue to the Northern District of Georgia was granted. (Order on Motion to Dismiss, p. 11).

Appellant amended his complaint five times. (Id.). Following this amendment, Lockheed filed a Motion to Dismiss Appellant's remaining claims of Presentation of False and Fraudulent Claims, 31 U.S.C. § 3729(a)(1)(A); False Records or Statements, 31 U.S.C. § 3729(a)(1)(B); and Retaliation, 31 U.S.C. §3730(h). The district court granted Lockheed's motion in its entirety. Appellant is only appealing the granting of the motion to dismiss the Retaliation claim.

### II

Appellant began working at Lockheed as a structural mechanic in 2010. (Id., p. 2).[1] His job involved sealing fuel tanks. Lockheed has standards for sealing fuel

---

[1] When considering an appeal on a motion to dismiss, all facts set forth in Plaintiff's complaint are to be accepted as true and the court must limit its

tanks. These standards are referred to as Lockheed's "Manufacturing Process Standards ("MPS"). According to the MPS: the process to seal fuel tanks is "slow, meticulous, and precise." (Order on Motion to Dismiss, p. 2). Appellant's allegation in this case is that his supervisor directed him to violate the MPS, by delaying the time in which to apply the sealant to the fuel tanks. (Id., at 2), and that Lockheed did not provide its employees with respirators and protective gear, even though the sealing process used a harmful chemical Toluene, forcing employees to work in hazardous conditions. (Id., at 3). First, Appellant reached out to his immediate supervisor, David Crump ("Crump") about these issues and the fact that Appellant and other employees were getting sick from fumes. (Id.). Appellant then reached out to his Union in 2015. (Id., at 7). Then Appellant and other employees reached out to the Occupational Safety Health Administration ("OSHA") in 2016 regarding these issues. (Id., at 3).

---

considerations to the pleadings and exhibits attached thereto. See Thaeter v. Palm Beach County Sheriff's Office, 449 F.3d 1342, 1352 (11th Cir. 2006).

On March 26, 2018 Appellant filed his original complaint in the Northern District of Oklahoma.[2] The complaint included a claim for *qui tam*. Pursuant to 31 U.S.C. § 3730(b)(2) the complaint was placed under seal, awaiting a decision by the United States whether it would intervene. After the sixty-day period expired, the United States did not intervene. Included in the complaint were allegations concerning the process used by Lockheed to seal fuel tanks.

On July 17, 2018 the United States Department of Defense ("DoD") inspected the Lockheed facility where Appellant worked and the spray guns used by Appellant for sealing fuel tanks were marked "out of compliance" by the DoD. (Id. at 9).

Immediately after the DoD personnel inspected the facility Appellant was moved to a roach infested building, lacking air conditioning, clean bathrooms, and a kitchen. (Id.). Appellant's job responsibilities went from skilled mechanic to fixing broken shelves and checking cars as they entered the facility. (Id.).

On October 22, 2018 Appellant was interviewed by the United States government about his allegations. (Id., p. 10, footnote 5). Two weeks later, on November 5, 2018, Appellant had his employment terminated by Lockheed. The

---

[2] Other than the safety claims, Appellant also alleged in his complaint that Lockheed was in violation of a list of governmental contracts and that Lockheed overcharged through its misrepresentations in its government bids. (Id., at 4-5).

November 5, 2018 letter stated: "After completing a thorough investigative process, [Lockheed] has determined that the Company is unable to accommodate your current medical limitation(s) at this time and that you are out pending placement, effective November 5, 2018." (Id. p. 10).

III

The standard of review in this case is de novo, as it is an appeal of an Order granting a Motion to Dismiss pursuant to Federal Rules of Civil Procedure, 12(b)(6). See Whatley v. CNA Ins., Co., 189 F. 3d 1310, 1313 (11th Cir. 1999).

## Summary of Argument

Appellant engaged in protected conduct: March 26, 2018 filing of a *qui tam* action and on October 22, 2018 talking to the U.S. government about his allegations. "These acts are protected activity because they are 'lawful acts' undertaken by [Appellant] in 'furtherance of an FCA claim." (Order on Motion to Dismiss, p. 32)(31 U.S.C. § 3730 (h)(1).

Appellant suffered two adverse employment actions by Lockheed. First, immediately following the DoD inspection on July 17, 2018, Appellant suffered an adverse employment action by being moved to a filthy room without air conditioning doing work such as fixing shelves, instead of the mechanical work which requires a high degree of expertise to perform. (Id., at 32). Second, following his October 22, 2018 meeting with the Government about his allegations he was fired two weeks later. (Id).

"A close temporal proximity between the protected expression and the adverse action is sufficient circumstantial evidence of a casual connection for the purposes of a prima facie case." Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004).

The district court committed error in dismissing Appellant's Retaliation claim. Temporarily Appellant sustained two separate adverse actions both with closely temporarily related protected conduct.

**Argument**

Appellant Tesfalem Issac ("Issac") was employed by Appellee Lockheed Martin ("Lockheed) from 2010 until November 2018 as a structural mechanic. (Order on Motion to Dismiss, p. 2). Issac worked with a team of mechanics that were responsible for sealing fuel tanks on a C-130J Super Hercules aircraft. (Id.).

The process for sealing fuel tanks is outlined in Lockheed's Manufacturing Process Standard ("MPS"). According to the MPS the process for sealing the fuel tanks is "slow, meticulous, and precise." (Id.). However, Issac was directed by his direct supervisor to not comply with the MPS. (Id.).

Further, Lockheed failed to provide to Issac and the other mechanics on his team with the required safety equipment. (Id., p. 3). This caused mechanics to get sick from inhaling fumes during the fuel tank sealing process. (Id.). Starting in late 2010 and onwards Issac and other employees began to report the "devastating health consequences" caused by inhaling fumes during the fuel tank sealing process. (Id., p. 7). Issac also reported that the MPS was not being followed in regard to the fuel tank sealing process. (Id.). In total, Issac spoke to six separate Lockheed employees regarding the failure to follow the MPS. (Id.).

In 2015 Issac sought medical treatment because of feeling ill from the fumes involved in the fuel tank sealing process. (Id., p. 8). His test results indicated abnormally high liver enzymes which, according to the manufacturer of the product

used in the fuel tank sealing process, can be a result. (Id.). Issac took this matter to his union, where he filed a complaint regarding the air quality in his workplace. (Id.). After the investigation Lockheed agreed to make modifications to help with the issue of air quality-however these modifications were never actually made so that Issac continued to suffer from medical problems. (Id.).

Because these safety issues continued Issac filed a *qui tam* lawsuit on March 26, 2018, in the United States District Court for the Northern District of Oklahoma. In addition to claims regarding violation of the Lockheed MPS, the *qui tam* complaint raised claims regarding the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733. Pursuant to 31 U.S.C. § 3730(b)(2), the complaint was placed under seal until the United States decided whether to intervene.

In July of 2018, three months after the *qui tam* lawsuit was filed The United States Department of Defense ("DoD") inspected the Lockheed facility where Issac worked. The DoD tagged equipment used in the sealing of fuel tanks "out of compliance." (Id., at 9). Immediately following the inspection Issac was removed from his highly skilled mechanic's position. He was assigned to a filthy, roach infested building lacking air-condition, clean bathrooms, or a kitchen. (Id.). Not only was Issac moved to a new location, his new job assignment included repairing broken shelves and checking cars entering the facility. (Id.). These new responsibilities did not require the skills used in sealing fuel tanks.

Later that year, on October 22, 2018 Issac was interviewed by investigators from the United States government. (<u>Id.</u>, p. 10, footnote 2). Two weeks later Issac was fired from his job at Lockheed. Issac was advised of this in a November 2018 letter. (<u>Id</u>).

These two incidents, being removed from the fuel tank sealing position, immediately following the DoD's inspection and being terminated two weeks after being interviewed by the United States Government are the basis of Issac's 31 U.S.C. § 3730(h)(1) Retaliation claims.

## Legal Standard

The district court dismissed Issac's claims after ruling on Lockheed's motion to dismiss, brought pursuant to Fed. R. Civ. P. 12(b)(6). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." <u>Thaeter v. Palm Beach County Sheriff's Office</u>, 449 F.3d 1342, 1352 (11th Cir. 2006)(all well-pleaded facts in a complaint are treated as true, as well as all reasonable inferences drawn from those facts, <u>see</u> <u>McGinley v. Houston</u>, 361 F.3d 1328, 1330 (11th Cir. 2004)).

The FCA creates a claim for retaliation:

Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in terms and conditions of employment

because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop one or more violations of this subchapter.

31 U.S.C. § 3730(h)(1). Unlike other False Claim Act ("FCA") claims a retaliation claim is only subject to the notice pleading standard of Rule 8(a). See Sanchez v. Lympatx, Inc., 596 F.3d 1300, 1304 (11th Cir. 2010).

In an FCA retaliation case, a plaintiff must show that he 1. Engaged in statutorily protected activity, 2. Suffered an adverse employment action, and 3. That the adverse action was casually related to the plaintiff's protected activities. See Simon ex rel. Fla. Rehab. Assocs., PLLC v. Healthsouth of Sarasota Ltd. P'ship, No. 21-11618, 2022 WL 3910607, at *5 (11th Cir. August 31, 2022).

There is no dispute that Issac properly plead that he engaged in statutorily protected activity for an FCA claim. These acts were the originally filed *qui tam* lawsuit, filed in March, 2018 and meeting with investigators from the U.S.A. government on October 22, 2018. "Because there is no dispute that Issac's March 26, 2018, filing of the *qui tam* action nor that his October 22, 2018, interview was protective activity, … Issac has satisfied the first factor to maintain an FCA relation claim." (Order on Motion to Dismiss, p. 32).

Further, there is no dispute that Issac suffered adverse employment actions for these two acts. In the first instance, after filing the *qui tam* action being transferred to a far inferior position at Lockheed and in the second instance being fired two

weeks after meeting with U.S government investigators regarding Issac's allegations against Lockheed. (Order on Motion to Dismiss, p. 33). This leaves one factor required to be pled in a FCA Retaliation claim, whether the adverse action is casually related to the protected conduct.

<u>The Adverse Employment Actions Suffered by Issac shows a Casual Connection between the Protected Activity and the Retaliation</u>

Under 11th Circuit precedence "a close temporal proximity between the protected expression and the adverse action is sufficient circumstantial evidence for a casual connection for purposes of a prima facie case." <u>Higdon v. Jackson</u>, 393 F.3d 1211, 1220 (11th Cir. 2004). In this case, Issac suffered two adverse employment actions. And in both instances there was close proximity between the protected actions and adverse actions.

On March 26, 2018 Issac filed this qui tam action. (Order on Motion to Dismiss, p. 8). Because the action was under seal while the United States decided whether to intercede in the case, the first that Lockheed would have been aware of Issac's whistle blower allegations was on July 17, 2018, when the DoD inspected the Lockheed facility and tagged the fuel tank sealing equipment as "out of

compliance."[3] "Immediately after the DoD inspection Issac was moved from his highly skilled mechanics position to fixing shelves and checking cars, located in a roach infested building lacking air condition, clean bathrooms and kitchens. (Id. p. 9).

On October 22, 2018 U.S. government investigators interviewed Issac. Two weeks later, on November 5, 2018 Issac's employment with Lockheed was terminated. Fourteen days is well within the time period that is not too protracted. Higdon v. Jackson, 393F.3d 1211, 1220 (11th Cir. 2004)("A period as much as one month between the protected expression and the adverse action is not too protracted.").

Despite the immediacy of the adverse actions following the protected conduct the district court dismissed Issac's complaint, finding that "the decision maker [has to be] aware of the protected conduct at the time of the adverse employment action." (Order on Motion to Dismiss, p. 34). The case cited for this statement of the law is Melvin v. Federal Express Corporation, 814 Fed App'x 506, 519 (11th Cir. 2020).

---

[3] Importantly Lockheed was aware of Issac's complaints regarding the equipment used during the fuel tank sealing process. This started in 2010 when he complained to his immediate supervisor, (Order on Motion to Dismiss, p. 7), in 2015 when he complained to his union, (Id., at 8), and complained to OSHA in 2016. (Id., at .3).

Melvin involved claims of Age Discrimination in Employment, ("ADEA") under title 29, not title 31. Secondly, and, importantly, Melvin was a decision granting summary judgment, not a motion to dismiss. As such, the ruling in Melvin is not applicable to this case.

Issac's retaliation claim is subject to notice pleadings under the standard of Fed Rules Civ. Pro. 8(a) which provides that a petition must contain:

(1) A short and plain statement of grounds for the court's jurisdiction, …
(2) A short and plain statement of the claim showing that the pleader is entitled to relief; and
(3) A demand for the relief sought, … .

The contents of Issac's petition satisfy this requirement. 1. Issac engaged in statutorily protected activity (Order on Motion to Dismiss, p. 30); 2. Issac suffered an adverse employment action (Id., p. 32); and 3. Issac showed a plausible causal connection for both instance, immediate adverse action after DoD's inspection and being fired two weeks after speaking with investigators.

While at trial Appellant will have to provide evidence that Lockheed had full knowledge of the protected conduct, at the motion to dismiss stage Issac has clearly met his burden. Thus, this court must reverse the district court's motion to dismiss as it pertains to Issac's retaliation claims.

## Conclusion

The district court improperly applied summary judgment standards to the standard for ruling on a motion to dismiss. Because of this error, this Court must reverse the district court and return this case to the Northern District of Georgia for the parties to litigate Issac's retaliation claims.

June 17, 2023

> Carlton Law, LLC
> */S/Matthew W. Carlton*
> Matthew W. Carlton
> Ga. Bar No. 110389
>
> Attorney for Appellant Tesfalem Issac

## Certificate of Compliance

Counsel for Appellant certifies this brief in is compliance with FRAP 32(g).

*/S/Matthew W. Carlton*
Matthew W. Carlton

## Certificate of Service

Counsel for Appellant certifies this brief was served through the electronic-filing system.